UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 15-31327-DHW
 Chapter 13
COREY LAWSON,

    Debtor.

_____

MICHELE BASSO,
K. BASSO,

    Plaintiffs,

v.  Adv. Proc. 15-03084

COREY LAWSON,

    Defendant.

## MEMORANDUM OPINION

In this complaint Michele Basso and K. Basso seek a determination that their claims against Corey Lawson are nondischargeable pursuant to 11 U.S.C. § 523(a)(6): the willful and malicious injury discharge exception. Trial was held on December 3, 2015. At trial, the Bassos were represented by their attorney, Anthony B. Bush, and Lawson was represented by his counsel, Sandra H. Lewis. For the following reasons, judgment will be for Lawson finding that the Bassos' claims are dischargeable in bankruptcy.

### Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C.

§ 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because the matter at issue here concerns the dischargeability of a debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Findings of Fact

There is one point that the parties do not dispute. On the late afternoon, early evening of December 7, 2010, Michele Basso and his fourteen year old daughter K. Basso were out in their Millbrook, Alabama neighborhood for a run.[1] From that point on, however, the parties' testimonies concerning the ensuing events are drastically different.

A.  The Bassos' version of the facts:

According to the Bassos, they were running on the left-hand side of Minawa Pass Road when Lawson, traveling in the opposite direction of the Bassos' run, sped by them in his Jeep almost hitting them. Both of the Bassos turned and made gestures to Lawson indicating that he should slow down. Their gestures were met with Lawson's honking of his horn as he continued driving away toward the cul-de-sac at the end of Minawa Pass Road.

The Bassos continued with their run and turned right off Minawa Pass Road and onto Eagle Rock Bend where they were met for the second time by the oncoming Jeep of Lawson. Michele Basso, fearing that he and his daughter were about to be run-over, pushed K off the street out of harm's way. He, Michele, was unable to avoid being hit by Lawson's vehicle. The Bassos both saw Lawson accelerate speed and steer the car toward Michele. Although Michele tried to jump clear, his arm was hit by the right side-mirror of Lawson's vehicle breaking Michele's arm.

The Bassos filed a civil suit against Lawson in the Circuit Court of Elmore County, Alabama. There, they were awarded default judgment against Lawson for claims arising from the December 7, 2010 events herein described.

B.  Lawson's version of the facts:

---

[1] K Basso was in training for her cross-country track team.

Lawson lived in the general area of the Eagle Rock subdivision and was familiar with the neighborhood. He picked up his small children from day-care and was headed home when he decided to turn into the Eagle Rock subdivision so that his children could see the Christmas decorations.

When Lawson turned right onto Minawa Pass Road, he first noticed the Bassos, who were standing off the street on the left-hand side. That encounter was uneventful, and Lawson continued to drive slowly up Minawa Pass Road viewing the holiday decorations. He made the loop at the Minawa Pass Road cul-de-sac and retraced his route back on Minawa Pass Road. Just before reaching the stop sign at the intersection of Minawa Pass Road and Eagle Rock Bend, Lawson was confronted by Michele Basso who rushed into the street wildly flailing his arms. Lawson slowed his vehicle and was able to drive around Basso.

Lawson was alarmed by Basso's erratic behavior, but he turned right onto Eagle Rock Bend, again allowing his children to view the decorations. All the while, Lawson noticed that Basso was pursuing his car. When he reached the cul-de-sac at the end of Eagle Rock Bend and made the loop, he encountered Basso who was standing directly in front of the Jeep blocking Lawson's way. Nevertheless, Lawson tried to pass around Basso on the left, but as he did so, Basso made a charge toward Lawson's passenger door. It was then that Lawson, fearing for the safety of himself and his children, sped up in order to drive away, and Basso was hit by the right-side mirror of the Lawson's Jeep.

Immediately after the incident, Lawson telephoned the Millbrook police in order to report the incident. Lawson offered to meet the police at the scene but was advised to return to his home. Ultimately, Lawson pressed criminal misdemeanor charges against Basso for criminal mischief. Those charges, however, were eventually dismissed. Lawson testified that he was not interested in prosecuting Basso criminally, but that he was told by the magistrate clerk that doing so was the only method of having Basso make restitution for the damage to his vehicle. Further, Lawson explained that at he was unable to attend the state court hearing initiated by Basso due to the death of a family member on the same day. He testified that he communicated this to the state court, but the hearing was not continued. Hence, default judgment entered against him.

C. The court's impression of the parties' testimonies:

Whenever witnesses' testimonies regarding events sharply differ, as they do

here, the court has the difficult task of determining the truth. In considering witnesses' testimony, courts may take a number of factors into account: the witness's opportunity and ability to see, hear, or know the things the witness is testifying about; the witness's memory; the witness's manner while testifying; any interest the witness has in the outcome of the case; any bias or prejudice the witness may have; any other evidence that contradicts the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence; and any other factors affecting believability. *See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) 1.1 (2013).

Both the Bassos and Lawson seemed sincere and forthcoming with their respective versions of the facts. The Bassos' testimonies, however, were not as clear and precise as that of Lawson. That lack of clarity was due in part to the Mr. Basso's heavy accent and to K. Basso's youth. The differences, in the undersigned's view, is a result of their differing perceptions of the events, and not as a result of intentional fabrications.

Further, the court looks for any discrepancies in a witness's testimony. There is an apparent discrepancy in the testimony of the Bassos. They mention encountering Lawson only twice on the evening in question. However, it would have been impossible for them not to have crossed paths with Lawson on less than three occasions. Recall that the Bassos testified that they were walking away from the cul-de-sac on Minawa Pass Road when they first saw Lawson's Jeep. Lawson, traveling in the opposite direction of the Bassos and toward the cul-de-sac, was said to have nearly hit the Bassos. According to the Bassos, the second encounter with Lawson came on Eagle Rock Bend. Lawson had made the loop in the Eagle Bend cul-de-sac when he allegedly sped up and steered toward the Bassos. Yet, in order for Lawson to have made the loop in the Eagle Bend cul-de-sac, he would have had to have passed the Bassos a second time to get to that spot. It follows that Basso was mistaken at least as to the number of times he encountered Lawson.

Additionally, in light of the entire body of evidence presented, the court can find no motive for Lawson to deliberately attempt to run-over two joggers. That conclusion is buttressed by the fact that Lawson reported the incident to the police immediately after it occurred; an action not typically taken by one who had just committed a battery.

Two people may form different perceptions of the same events and honestly believe in the correctness of their view. In the opinion of the undersigned, Lawson's view of the events of the evening of December 7, 2010 are closer to what actually occurred than that of the Bassos.

## Conclusions of Law

The court begins the analysis with a necessary aside. The court recognizes that § 523(a)(6) exceptions to discharge are subject to the principles of collateral estoppel. Collateral estoppel requires that "(1) the issue in the previous action and the present action is identical; (2) *the issue was actually litigated in the prior action*; and (3) resolution of the issues was critical and necessary to the earlier judgment." *In re Sullivan*, 2011 WL 1980545, *3 (Bankr. S.D.Ala. 2011) (emphasis added). Here, the Bassos received a default judgment in state court on their complaint against Lawson which was based upon claims arising from this very incident. However, "default judgments are not given preclusive effect because in a default scenario the 'actually litigated' requirement is not met." *In re Glaude*, 2014 WL 7359165, *2 (Bankr. S.D.Ala. December 23, 2014) (citing *In re Wald*, 208 B.R. 516 (Bankr. N.D.Ala. 1997)).[2] Hence, there is no collateral estoppel bar to this court's litigation of this matter.

An exception to discharge is to be strictly construed, and the creditor bears the burden of proving the exception. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986) *abrogated by Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L.Ed. 2d 755 (1991). "[C]ourts generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor,' and recognize that the 'reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.'" *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994) (citations omitted). Exceptions are construed strictly to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995). The creditor must prove each of the elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991).

The Bankruptcy Code excepts from discharge a debt for a willful and malicious injury by an individual debtor. The statute provides:

---

2 An exception to this rule exists if a penalty default judgment was entered. A penalty default judgment may be entered when a defendant substantially participates in litigation and demonstrates bad faith in the process, examples of which may include: purposeful evasion of service, refusal to participate in discovery, or willful failure to appear for trial. *See In re Glaude, supra* at *2; In re Wald, supra*. In the state court proceeding here, there is no evidence of bad faith on Lawson's behalf.

> "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another."

11 U.S.C. § 523(a)(6).

Under 11 U.S.C. § 523(a)(6), the injury must be both "willful and malicious." "Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S.Ct. 974, 977 (1998). "Willful" modifies "injury," "indicating that nondischargeability takes a deliberate or intentional injury not merely a deliberate or intentional act that leads to injury." *Id.* at 61. To be nondischargeable, the debtor must intend to injure the plaintiff or his property. It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act. *In re Walker*, *supra*. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger, supra* at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Walker, supra* at 1164 (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

Now, applying the facts of this case to the law, the undersigned is not convinced that Lawson intentionally injured the Bassos. Instead, this is more a case of mistaken impression. Basso pursued Lawson in order to impress upon him the need to slow down his vehicle not to attack Lawson. Lawson, however, perceived Basso's pursuit as an attack upon himself and his children by someone who was irrational and unstable. In order to avoid that perceived attack, he endeavored to elude Basso. Instead of attempting to injure Basso, Lawson was attempting to escape the situation when the injury occurred.

Again, the undersigned is not convinced by a preponderance of the evidence that Lawson intended to harm the Bassos. Without an intent by the debtor to injure, the debt cannot be held to be nondischargeable under 11 U.S.C. § 502(a)(6).

## Conclusion

For the foregoing reasons, the debts owed by Lawson to the Bassos are dischargeable in this bankruptcy proceeding. Accordingly, judgment will separately

enter in favor of the defendant and against the plaintiffs.

Done this the 9th day of December, 2015.

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c:   Anthony B. Bush, Plaintiffs' Attorney
     Sandra H. Lewis, Defendant's Attorney